# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAN FIELDMAN, No. M-23832, Petitioner, vs. STEPHANIE DORETHY, Warden, Hill Correctional Center, Respondent. | Case No. 15-cv-1389-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Respondent's Motion to Stay Judgment Pending Appeal, brought pursuant to Federal Rules of Appellate Procedure 8(a)[1] and 23(c), and Federal Rule of Civil Procedure 62(d). (Doc. 24). Petitioner Fieldman objects to the motion to stay, and includes a cross motion for his release on recognizance. (Doc. 30).

On March 27, 2019, this Court granted Fieldman's Petition for Writ of Habeas Corpus and ordered Respondent to release him from custody unless the State of Illinois initiates proceedings to retry him within 60 days. (Doc. 22). Respondent has appealed from the Court's Judgment and notes that the State does plan to retry Fieldman "if necessary." (Doc. 24, p. 3). The stay of judgment is sought in order to keep Fieldman in custody while the Respondent's appeal is pending.

For the reasons set forth below, the motion to stay judgment will be denied, with some modifications to the Court's previous order, and the cross motion for release on recognizance shall be conditionally granted.

---

[1] Rule 8(a)(1) of the Federal Rules of Appellate Procedure directs that a motion for stay of a judgment should initially be brought before the district court.

1

# DISCUSSION

Federal Rule of Appellate Procedure 23(c) provides that:

> While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety.

The rule establishes a strong presumption that a successful habeas petitioner should be released from custody during the pendency of an appeal. *See Hilton v. Braunskill,* 481 U.S. 770, 774, 777 (1987); *Etherly v. Schwartz,* 590 F.3d 531, 532 (7th Cir. 2009). The presumption of release may be overcome if the state demonstrates that "the traditional factors regulating the issuance of a stay weigh in favor of granting a stay." *O'Brien v. O'Laughlin,* 557 U.S. 1301, 1302 (2009). These factors are: "(1) whether the state has made a strong showing that it is likely to succeed on the merits of its appeal; (2) whether the state will be irreparably harmed absent a stay; (3) whether the issuance of a stay will substantially injure the other parties to the proceeding; and (4) where the public interest lies." *Etherly,* 590 F.3d at 532 (citing *O'Brien,* 557 U.S. at 1302; *Hilton,* 481 U.S. at 776).

*Hilton* further instructs that:

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. [internal citations omitted.] Where the State's showing on the merits falls below this level, the preference for release should control.

*Hilton,* 481 U.S. at 778.

Respondent argues that she has a substantial likelihood of success on the merits in the pending appeal, reasoning that Fieldman's evidence regarding his intent was properly excluded by

the trial court as irrelevant in light of his failure to raise the defense of compulsion,[2] and citing the "highly deferential standard on collateral review." (Doc. 24, pp. 2-3). Unfortunately, however, Respondent misstates the key issue in this case by asserting, "[t]his case involves a disagreement over whether certain evidence was relevant." (Doc. 24, p. 2). Instead, this Court found, as argued by Fieldman at trial and in this proceeding, that the trial court's exclusion of his proffered evidence violated his well-established constitutional right to present a defense. Respondent's motion couches her argument in the narrow terms of an evidentiary dispute and fails to engage with the Court's reasoning that led to the grant of habeas corpus relief. Respondent's reliance on the deferential standard of review in the context of federal habeas corpus does not itself establish a strong or substantial likelihood of success on appeal, or that Respondent has a substantial case on the merits. Under the *Hilton* analysis, the "preference for release" should control in light of this weak showing on the merits.

Furthermore, the other *Hilton* factors weigh against granting the stay. Respondent's motion does not demonstrate that the state will be irreparably harmed if the stay is granted. She does not explain how the "cost and complexity of retrying petitioner while an appeal is ongoing" would constitute irreparable injury, nor does she cite authority in support of this proposition. Instead, case law indicates that the cost of a retrial does not constitute irreparable harm. *See Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J., in chambers) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974), to note that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to establish irreparable harm warranting a stay of mandate); *Crist v. Miller*, 846 F.2d 1143, 1144 (7th Cir. 1988) ("The

---

[2] As Fieldman points out, he never raised the affirmative defense of compulsion at trial, as that defense would have required him to admit that he committed the offense with which he was charged. A compulsion defense was inconsistent with Fieldman's assertion that he lacked the requisite intent to commit solicitation of murder for hire. (Doc. 30, p. 4, n.1; Doc. 20, p. 26, n.5).

3

ordinary incidents of litigation—the time and other resources consumed—do not constitute irreparable harm.").

In contrast, the issuance of a stay will result in substantial injury (and irreparable harm) to Fieldman in the form of continued incarceration under a constitutionally flawed conviction. A stay pending the outcome of Respondent's appeal could easily result in Fieldman being imprisoned in excess of two additional years, given the average time for an appeal to be adjudicated in this Circuit. He has already served nearly nine years in prison.

As to the fourth factor, any public interest in maintaining the status quo (Doc. 24, p. 3) is outweighed by the public interest in "ensuring that individuals are not imprisoned in violation of the Constitution." *U.S. ex rel. Newman v. Rednour*, 917 F. Supp. 2d 765, 789 (N.D. Ill. 2012), *aff'd sub nom. Newman v. Harrington*, 726 F.3d 921 (7th Cir. 2013); (Doc. 30, p. 9). To be sure, the felony offense of solicitation of murder for hire of two individuals is a serious one. But Respondent skews the Court's meaning by suggesting that the Court's "acknowledge[ment] that the evidence against petitioner was compelling" would favor Respondent's position on appeal. (Doc. 24, p. 3). The Court's comment on the incriminating nature of the videotape evidence of Fieldman's interaction with the purported "hitman" emphasized the critical importance of allowing Fieldman to fully present his defense in countering that evidence, which the trial court did not permit. (Doc. 22, p. 23).

The offense of conviction does not itself justify the continuation of Fieldman's custody pending the appeal. "If the mere fact of having been convicted in the case to which a habeas corpus petition is directed was enough to overcome Rule 23(c)'s presumption of release, the presumption would be meaningless." *Hampton v. Leibach*, No. 99-C-5473, 2001 WL 1618737, at *2 (N.D. Ill. Dec. 18, 2001). Aside from minor traffic offenses, Fieldman had no criminal record prior to this

4

conviction, let alone any history of violent behavior. (Doc. 30-1, p. 3). Respondent has not submitted any material or argument to suggest that Fieldman's conduct during his incarceration would pose any danger to the public if he were to be released. Furthermore, Fieldman's response and cross motion delineates his ties to his family and community, and his potential to secure employment, indicating that he is not likely to be a flight risk. Respondent has not put forth any information suggesting that Fieldman would pose a risk of flight.

**IT IS THEREFORE ORDERED** that Respondent's motion to stay the judgment pending appeal (Doc. 24) is **DENIED**. Upon further consideration of the timing of a possible retrial of Fieldman, however, the Court *sua sponte* **EXTENDS** the time for the State of Illinois to decide whether to commence a retrial. The order granting habeas corpus relief (Doc. 22, p. 28) is therefore **MODIFIED** as follows: (1) If the State of Illinois has not initiated proceedings to retry Fieldman by May 28, 2019,[3] then Respondent shall release Fieldman from custody on or before that date, subject to the conditions below; and (2) the State of Illinois is not required to initiate proceedings to retry Fieldman during the pendency of the appeal. Instead, the State may defer its decision regarding a retrial until **14 days** after the Seventh Circuit issues an opinion disposing of the pending appeal of the order granting habeas corpus relief.

**IT IS FURTHER ORDERED** that Petitioner Fieldman's cross motion for release on recognizance without surety (Doc. 30) is conditionally **GRANTED**, subject to the supervision requirements set forth below. Pursuant to Federal Rule of Appellate Procedure 23(c), if retrial proceedings have not been initiated by May 28, 2019, Respondent **SHALL** release Petitioner Shan Fieldman from prison effective at noon C.D.T. on **Tuesday, May 28, 2019**. Respondent shall

---

[3] The Court's order of March 27, 2019 (Doc. 22) ordered Fieldman's release within 60 days unless retrial proceedings were initiated before the 60 days expires. Because the 60th day falls on Sunday, May 26, and May 27th is a federal holiday, the release date is moved to Tuesday, May 28, 2019.

5

notify the Court by May 28, 2019, if the State has initiated retrial proceedings on or before that date.

Because the appellate proceedings in this matter have not yet concluded, and Fieldman may be required to serve the remainder of his sentence or otherwise appear for legal proceedings, the Court finds it prudent to impose conditions of supervision consistent with those routinely ordered in similar circumstances. Fieldman shall be subject to supervision by the United States Probation Office for the Central District of Illinois, Peoria Division,[4] on the conditions set forth below. United States Probation Officers are authorized to undertake such supervision pursuant to 18 U.S.C. § 3603(10), and courts have routinely ordered such supervision when a successful habeas petitioner is released under Federal Rule of Appellate Procedure 23. *See, e.g.*, *Harris v. Thompson*, 2013 U.S. App. LEXIS 16715, 9-10 (7th Cir. Feb. 20, 2013); *Newman v. Metrish*, 300 F. App'x 342, 344 (6th Cir. 2008); *Dassey v. Dittmann*, No. 14-cv-1310, 2016 WL 6684214 (E.D. Wis. Nov. 14, 2016); *Waiters v. Lee*, 168 F. Supp. 3d 447, 455 (E.D. N.Y. 2016); *Decker v. Persson*, No. 13-cv-1415, 2015 U.S. Dist. LEXIS 153585, 17-18; 2015 WL 7069662, *5-6 (D. Or. Nov. 13, 2015); *U.S. ex rel. Newman v. Rednour*, 917 F. Supp. 2d 765, 792 (N.D. Ill. 2013).

Fieldman's release pending appeal is subject to the following conditions. Violation of any condition may result in the Court ordering Fieldman returned to custody pending the outcome of the appeal.

1. Petitioner Fieldman must report to the U.S. Probation Office in the federal district to which he is released within seventy-two hours of his release from the custody of the Illinois Department of Corrections – that is, no later than noon C.D.T. on Friday, May 31, 2019. At or before that time, Fieldman shall provide the Probation Office with the address of his intended residence and a telephone number where he may be reached.

---

[4] Fieldman's cross motion (Doc. 30) states that if released, he expects to reside with his mother in Dwight, Illinois. Dwight is primarily located in Livingston County, which is within the jurisdiction of the Central District of Illinois. 28 U.S.C. § 93(b). However, in the event that his mother's residence is located in the portion of Dwight that reaches into Grundy County, Fieldman's supervision shall be transferred to the United States Probation Office for the Northern District of Illinois. *See* 28 U.S.C. § 93(a)(1).

He shall continue to report to the Probation Office periodically as directed by the United States District Court or the Probation Office.

2. Fieldman shall not commit any federal, state, or local crime.

3. Fieldman shall not unlawfully use or possess a controlled substance.

4. Fieldman shall not knowingly possess a firearm, ammunition, or destructive device. He shall not knowingly possess a dangerous weapon unless approved by the Court.

5. Fieldman shall not knowingly leave the State of Illinois without the permission of the Court or the probation officer.

6. Fieldman shall report to the probation officer in a reasonable manner and frequency directed by the Court or probation officer.

7. Fieldman shall respond to all inquiries of the probation officer and follow all reasonable instructions of the probation officer.

8. Fieldman shall not knowingly have any contact with his former spouse Shelley Fieldman, Alan Chrossfield, or anyone involved in the investigation or prosecution of his underlying state criminal case in *People v. Fieldman*, Livingston County Case No. 10-CF-199.

9. Fieldman shall be monitored by a form of location monitoring as determined by the probation officer, and shall abide by all technology requirements. Fieldman shall pay all or a portion of the costs of participation in the location monitoring program based on his ability to pay. The Court directs the probation officer to determine the type of location monitoring technology utilized, approve any necessary schedule changes, monitor Fieldman's compliance with the program requirements, determine a copayment amount, and assist in the collection of copayments.

10. Fieldman is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered obligations; or other activities pre-approved by the probation officer.

11. Fieldman shall notify the probation officer prior to an expected change, or within seventy-two hours after an unexpected change, in residence, employment, or telephone number.

12. Fieldman shall not knowingly meet, communicate, or otherwise interact with a person whom Fieldman knows to be engaged, or planning to be engaged, in criminal activity.

13. Fieldman shall permit a probation officer to visit him at a reasonable time at home or at any other reasonable location and shall permit confiscation of any contraband observed in plain view of the probation officer.

14. Fieldman shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15. Fieldman shall not obtain a passport.

The Clerk is **DIRECTED** to provide a copy of this Order to the United States Probation Office for the Southern District of Illinois and the Central District of Illinois.

**IT IS SO ORDERED.**

**DATE:  May 16, 2019**

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**